UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TAYLOR E. BUCHANAN,                )
                                   )
                    Plaintiff,     )
                                   )
            v.                     )        No.  4:14CV501 ACL
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social Security,   )
                                   )
                    Defendant.     )

## MEMORANDUM AND ORDER

Plaintiff Taylor E. Buchanan brings this action pursuant to 42 U.S.C. §
405(g), seeking judicial review of the Social Security Administration (SSA)
Commissioner's (Commissioner) denial of her disability claim.  Buchanan had
previously been found disabled as a child, but was found not to be disabled as an
adult upon turning eighteen years old.  Buchanan requests that the matter be
reversed and remanded to the Commissioner for an award of benefits, or for further
proceedings.

This matter is pending before the undersigned United States Magistrate
Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  A summary of
the entire record is presented in the parties' briefs and is repeated here only to the
extent necessary.  Because substantial evidence supports the ALJ's opinion, the
Commissioner's decision denying benefits is AFFIRMED.

# I. Factual and Procedural Background

When Buchanan was four months old, she was awarded child supplemental security income (SSI) based on the SSA finding that she was disabled as of November 1, 1993. The disability finding was based on the fact that Buchanan was diagnosed with hereditary spherocytosis.[1] The rules applicable to SSA determinations of disability require that when a child attains the age of eighteen, a redetermination of eligibility for disability benefits must be conducted. 20 C.F.R. § 416.987.

A few months after Buchanan's eighteenth birthday, in a letter dated November 14, 2011, the SSA notified Buchanan that it had determined that she was no longer qualified for SSI benefits as of November 1, 2011, under the definition of disability for adults. (Tr. 60-68.) Buchanan requested reconsideration of that decision and the matter was presented to a Disability Hearing Officer who reviewed the evidence and issued a written decision on February 16, 2012, finding that Buchanan was no longer eligible for payments. (Tr. 75-83.)

---

[1] Hereditary spherocytosis is a condition affecting red blood cells. People with the condition typically experience anemia, jaundice, and an enlarged spleen. *Hereditary spherocytosis*, Genetics Home Reference (published Feb. 15, 2015), *available at* <http://ghr.nlm.nih.gov/ condition/hereditary-spherocytosis>. In a letter dated August 2012, Dr. Cheng, Buchanan's pediatrician, reported that Buchanan experienced no major effects from this condition since having her spleen removed in 2003. (Tr. 436.)

Next, Buchanan requested a hearing before an Administrative Law Judge (ALJ). That hearing was held on December 20, 2012. Buchanan and a vocational expert testified. (Tr. 27-49.) The ALJ issued a decision on February 8, 2013, finding that Buchanan's disability ended on November 15, 2011, and that she had not become disabled since that time. (Tr. 7-21.) Additionally, the ALJ found that Buchanan had several severe impairments, including: ADHD, learning disorder, and bipolar disorder. The ALJ also found that although Buchanan did not have any past relevant work, she had the residual functional capacity (RFC) to perform work as a hand packer, laundry worker, and janitor/housekeeper, which exist in significant numbers in the national economy.

On January 31, 2014, the Appeals Council denied Buchanan's request for review of the ALJ's decision. (Tr. 1-3.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, Buchanan claims that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to accord proper weight to the opinion evidence of record. Specifically, Buchanan argues that her treating psychiatrist's (Dr. Bhuyan) opinion was entitled to "substantial/significant if not controlling weight." (Doc. 16 at 12, 14) Buchanan alleges that the ALJ's failure to weigh Dr. Bhuyan's opinion more heavily was based on the ALJ's improper consideration of the opinions from Dr.

Cheng, Dr. Buffkins, and an SSA interviewer, A. Duvall, as well as Buchanan's refusal to recognize, or lack of insight into her limitations. *Id.* at 8-14.

## II. Applicable Law and Standard of Review

When a claimant who was awarded disability benefits as a child turns eighteen years old the SSA re-determines the claimant's eligibility for disability benefits. 20 C.F.R. § 416.987. The rules used for "age-18 redeterminations" are those applicable to adult claimants who file new applications for benefits, that is, the rules set out in 20 C.F.R. § 416.920(c)-(h). *See* 20 C.F.R. § 416.987(b). Accordingly, the framework used by the Commissioner in age-18 redeterminations is the familiar five-step sequential analysis for reviewing new adult applications for disability, except that whether the claimant is engaged in substantial gainful activity is not considered. *Id.*

In age-18 redeterminations, the Commissioner first determines whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the next step, the Commissioner establishes whether the claimant can

- 4 -

perform her past relevant work. If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the Commissioner evaluates various factors to determine whether she is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits. 20 C.F.R. § 416.920(c)-(g). Throughout all steps of the process, the claimant retains the burden of demonstrating that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). With age-18 redeterminations, the Commissioner may find a claimant not to be disabled even though there was a previous finding of disability as a child. 20 C.F.R. § 416.987(a)(2).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal

quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions," the Commissioner's decision must be affirmed. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The decision may not be reversed merely because substantial evidence could also

support a contrary outcome.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

## III.  The ALJ's Decision

The ALJ found that Buchanan attained eighteen years of age on July 19, 2011, and was eligible for receipt of supplemental security income as a child for the month prior to the month of her eighteenth birthday.

The ALJ considered substantial records from various treating and consulting professionals.  One of the treating professionals was Buchanan's treating psychiatrist, Dr. Elly Bhuyan.  The ALJ gave "little evidentiary weight to the findings of limitations and opinions" of Dr. Bhuyan.  (Tr. 17.)  The ALJ's consideration of the records from Dr. Bhuyan was thorough, and included treatment records dated July 2, 2010 through November 6, 2012, and a recognition of the fact that Buchanan had been a patient since January 31, 2000.  In determining to give little weight to Dr. Bhuyan's opinion, the ALJ discussed the supportability and consistency of Dr. Bhuyan's opinions or lack of supportability and consistency, within the record of the case as a whole.  The ALJ wrote:

> Treatment records. . .document complaints of social anxiety, suicidal thoughts, and low mood.  It was noted that [Buchanan] was socially behind and immature. . .[and] that [her] current Global Assessment of Functioning *(GAF) scores were 66-69, which is consistent with only mild limitations of functioning. . .the treatment records contain subjective reports and very little if any objective medical findings of significant deficiencies in cognition, mood, affect, thought process, speech, or psychomotor activity.*  Although the claimant reported having social

- 7 -

problems, it was noted *she had a boyfriend and she reported she was not fighting with her mother.* In December 2011, [Buchanan] reported *she was working one day per week. . .*[on other days, Buchanan] reported[:] she was in a good mood and that she had applied for Social Security disability. . .*she got good grades last semester and she was going on a trip to New York with her music class. . .[she] was working in a movie theater. . .she graduated from high school and was getting vocational rehabilitation services. . .*On August 12, 2012,. . .she was frustrated that she did not get Social Security disability. . .

On September 12, 2012, Dr. Bhuyan completed a Mental Residual Functional Capacity Questionnaire [MRFCQ]. . .indicating many moderate to marked limitations of functioning. Specifically,. . .claimant was markedly limited in her abilities to: get along with coworkers or peers with distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; deal with normal work stress; be aware of hazards and take necessary precautions; maintain regular attendance; or sustain an ordinary routine without special supervision. . .Dr. Bhuyan noted moderate limitations in carrying out very short and simple instructions; maintaining attention for two-hour segments; making simple work-related decisions; and asking simple questions or requesting assistance. . .[Buchanan] was an emotionally fragile individual and. . .did not have the capacity to hold a meaningful job on her own to support her. . .[Buchanan] was tolerating her medications. . . .[she] was assigned *current. . .**GAF scores of 64 to 70, which is consistent with only mild limitations of functioning and grossly inconsistent with the findings of marked or even moderate limitations** noted by Dr. Bhuyan in the [MRFCQ].* Moreover, *the findings of limitations are also **inconsistent with the findings in the school records** that the claimant's strengths included her ability to participate in class, complete tasks, and ask questions when she needed help.*

(Tr. 16-17; emphasis added.)

After thorough consideration of the other documents and opinions within the record, the ALJ found that Buchanan was determined to no longer be disabled as of November 15, 2011, based on a redetermination of disability under the rules for adults filing new applications. The ALJ found that since November 15, 2011, Buchanan's ADHD, learning disorder, and bipolar disorder were severe impairments, but that they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12.) Additionally, the ALJ found that, since November 15, 2011, Buchanan had the RFC to perform work at all exertional levels, except that she was

> limited to occupations that involve only simple, routine, and repetitive tasks. She is limited to occupations that do not require addition, subtraction, multiplication, or division. In a low stress job that is defined as having only occasional changes in the work setting and only occasional judgment required on the job. Furthermore, the claimant is limited to only occasional interaction with the public, and only occasional interaction with coworkers, but contact with coworkers can occur as long as said contact is casual and infrequent. Lastly, the claimant requires isolated work defined as supervisory contact concerning work duties, when work duties are being performed up to expectations, occurs no more than four times per workday.

(Tr. 13-14.) The ALJ determined that Buchanan did not have any past relevant work. Considering Buchanan's age, education, work experience, and RFC, the ALJ determined that vocational expert testimony supported a finding that Buchanan could perform work as it exists in significant numbers in the national

economy, specifically, as a hand packer, laundry worker, and janitor/housekeeper. The ALJ concluded that Buchanan's disability ended on November 15, 2011, and that she had not become disabled since that date. (Tr. 19-20.)

## IV. Discussion

Buchanan's overarching argument is that the ALJ erred by not attributing significant weight to her treating psychiatrist, Dr. Bhuyan. According to Buchanan, the ALJ should have accorded Dr. Bhuyan's opinion "substantial if not controlling weight." (Doc. 16 at 12, 14.) To support her argument, Buchanan claims that the reasons offered by the ALJ to discredit Dr. Bhuyan's opinion were not good reasons, specifically, noting that "the ALJ failed to explain how being emotionally fragile was inconsistent with tolerating medications" and "[t]he ALJ should have afforded greater weight to the medical and educational evidence than to a GAF score." *Id*. at 9. Buchanan also argued that Dr. Bhuyan's opinion should have been afforded greater weight as it was consistent with Dr. Cheng's opinion letter dated August 28, 2012, which stated although Buchanan is capable of "manual light labor," it would be difficult for her to sustain regular employment based on "her inability to stay focused on tasks for a substantial period," *id*. at 11-12; and the ALJ erred by not identifying the weight given to the opinion of Dr. Buffkins, *id*. at 14, a consultative examiner.

For the following reasons, the Court disagrees.

### IV.A. Opinion Evidence

When evaluating opinion evidence, the ALJ is required by the Regulations to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 416.927(e)(2)(ii). The Regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. § 416.927(c)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.*; *see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* However, a treating physician's opinion is not automatically controlling. *Grable v. Colvin,* 770 F.3d 1196, 1201 (8th Cir. 2014). "An ALJ may 'discount or disregard a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence, or where a treating

physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (quoting *Smith v. Colvin*, 756 F.3d 621, 625-26 (8th Cir. 2014)). In addition, a medical source's opinion that an applicant is unable to work involves an issue reserved for the Commissioner and is not the type of opinion that the Commissioner must credit. *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the treating physician provides support for her findings, whether other evidence in the record is consistent with the treating physician's findings, and the treating physician's area of specialty. 20 C.F.R. § 416.927(c). The Regulations further provide that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 416.927(c)(2). <u>Inconsistency with other substantial evidence alone is sufficient to discount a treating physician's opinion.</u> *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) (emphasis added).

For the following reasons, the ALJ's decision to "give[] little evidentiary weight to the findings of limitation and the opinions by Dr. Bhuyan" (Tr. 16) is

supported by substantial evidence on the record as a whole.

## IV.A.1.    Dr. Bhuyan

Elly Bhuyan is a Medical Doctor and Distinguished Life Fellow of the American Psychiatric Association.  She has been Buchanan's treating psychiatrist since Buchanan was six years old.  In September 2012, Dr. Bhuyan completed a Mental RFC Questionnaire in which she rendered opinions that Buchanan experienced numerous limitations so significant that she would essentially be unable to function effectively in the workplace.  The ALJ found these opined limitations to be inconsistent with Dr. Bhuyan's own assignment of GAF scores that indicated only mild limitations; and, further, to be inconsistent with other evidence of record, including Buchanan's school records.  (Tr. 17.)

In August 2011, Dr. Bhuyan informed disability determinations that Buchanan's GAF score was 66-69, indicating mild limitations of functioning.  In her September 2012 RFC Questionnaire, Dr. Bhuyan again reported Buchanan's GAF score to be consistent with mild limitations, stating the score to currently be 64-70 with Buchanan's highest score in the previous year to be 70.[2]  As noted by the ALJ, these GAF scores, as assigned by Dr. Bhuyan, are inconsistent with her opinion that Buchanan suffers from limitations that effectively preclude her from

---

[2]  Notably, consulting psychologist Dr. Buffkins assigned a consistent GAF score of 66-69 during her October 2011 evaluation of Buchanan.

engaging in any sustained work-related activity. Contrary to Buchanan's assertion, an ALJ is permitted to consider GAF scores and their consistency with other evidence of record. Where, as here, a treating physician renders an opinion that a claimant suffers from extreme limitations, the ALJ is not compelled to give controlling weight to that opinion when that same physician also assigned GAF scores indicating that claimant experienced only moderate to mild symptoms. *See Halverson v. Astrue,* 600 F.3d 922, 930 (8th Cir. 2010); *Goff v. Barnhart,* 421 F.3d 785, 791 (8th Cir. 2005).

Although Buchanan argues that the ALJ improperly relied on only the GAF scores to discredit Dr. Bhuyan's opinion and did not consider other substantial medical and other evidence of record, a review of the ALJ's decision shows this claim to be without merit. The ALJ thoroughly reviewed all of the evidence of record, including treatment notes and opinion evidence from Buchanan's treating physicians, reports from consultative evaluations, Buchanan's school records, and Buchanan's subjective claims. While the ALJ considered Buchanan's GAF scores when weighing Dr. Bhuyan's opinion, he also specifically noted that her opinion regarding Buchanan's limitations were inconsistent with observations made in Buchanan's school records that demonstrated Buchanan's ability to participate in class, complete tasks, and ask questions. As detailed in the next section, a review of the record *in toto* shows there to be substantial evidence that Buchanan was not

as limited as opined by Dr. Bhuyan.  The ALJ did not err in according little weight to her opinion.

That being said, a review of the ALJ's RFC assessment shows it to contain significant functional limitations, including the limitation to simple, routine, and repetitive work with no math computations required; low stress work with only occasional changes in work setting and only occasional judgment required; only occasional interaction with the public and coworkers; and isolated work with no more than four contacts with supervisors per day.  Such limitations are consistent with many of the limitations described by Dr. Bhuyan.  It cannot be said, therefore, that the ALJ wholly failed to consider Dr. Bhuyan's opinion or that the RFC assessment is not supported by some medical evidence.  *See Martise v. Astrue,* 641 F.3d 909, 926 (8th Cir.2011); *Ellis,* 392 F.3d at 994.  An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."  *Martise,* 641 F.3d at 927 (internal quotation marks and citation omitted).  Instead, the ALJ must determine a claimant's RFC based on his review of the record as a whole.  The ALJ did so here.

## IV.A.2.        Dr. Cheng

Dr. Cheng was Buchanan's treating pediatrician since 1999.  The ALJ accorded little weight to the opinions (Tr. 16) expressed in Dr. Cheng's August 2012 Physical RFC Questionnaire, *id*. at 437-41, and accompanying letter, *id*. at

436. The ALJ noted that the opined physical limitations in the Questionnaire were inconsistent with Dr. Cheng's treatment notes that yielded normal medical findings ("aside from intermittent findings of congestion, the medical findings were normal," Tr. 16; no major issues related to anemia after splenectomy in 2003, *id.*). Additionally, even Dr. Cheng noted that "[o]verall, this Questionnaire is not appropriate for assessing [Buchanan]'s functional capacity, as much of it asks about physical disabilities which [Buchanan] does not suffer from." (Tr. 436.) Dr. Cheng further suggested, "I do not prescribe [Buchanan's psychotropic] medications,. . .I strongly suggest you have her psychiatrist provide you a list of those medications and provide you a more comprehensive analysis of her ability to work." *Id.*

Where limitations in a treating physician's opinion were never mentioned in the physician's treatment records, nor are supported by any objective testing or reasoning, the ALJ does not err in discounting that physician's opinion. *Cline v. Colvin,* 771 F.3d 1098, 1103-04 (8th Cir. 2014). Nor does the ALJ err in according little weight to a treating physician's opinion when it contains internal inconsistencies. *Anderson v. Barnhart*, 344 F.3d 809, 813 (8th Cir. 2003). *See also Bernard v. Colvin,* 774 F.3d 482, 487 (8th Cir. 2014) (ALJ may give less weight to inconsistent opinion by treating physician); *Wagner v. Astrue*, 499 F.3d 842, 849-50 (8th Cir. 2007) (and cases cited therein) (physician opinions that are

internally inconsistent are entitled to less deference).

With respect to the opined behavioral limitations due to Buchanan's mental impairments, the ALJ noted that Dr. Cheng never treated Buchanan for any psychological impairment. An ALJ properly discounts a treating physician's opinion when it is based on an area outside of the physician's expertise. *See Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003). In addition, the ALJ noted that at the time Dr. Cheng rendered his opinions, he had admittedly not seen Buchanan for over one year. Indeed, the record shows that Buchanan last visited Dr. Cheng in May 2011, which was two months prior to her attaining eighteen years of age, six months prior to the SSA's determination that she was not disabled under the rules governing adult disability, and fifteen months prior to rendering his opinions as to Buchanan's RFC. Given that Dr. Cheng's opinions were based on remote medical evidence outside the relevant period, the ALJ did not err in discounting such opinions. *Cf. Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997) (proper for ALJ to accord greater weight to opinions of physicians who rendered treatment during relevant time and who gave opinions close to the time she was actually treated); *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995) (error to rely on remote medical evidence to determine RFC; RFC must reflect claimant's functional abilities at time of hearing).

Substantial evidence supports the ALJ's reasons to accord little weight to

Dr. Cheng's opinions regarding Buchanan's physical and mental limitations. The ALJ did not err in according such weight.

### IV.A.3.    Dr. Buffkins

Plaintiff claims that the ALJ failed to explain the weight he gave to Dr. Buffkins' opinion and that such failure constituted error requiring remand inasmuch as the weight accorded to the opinion would have affected the outcome of the case. (Doc. 16 at 12-14.) For the following reasons, Buchanan's claim fails.

As noted above, the ALJ must explain in his decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. § 416.927(e)(2)(ii). By explaining the weight given to medical source opinions, an ALJ both complies with the Regulations and assists the Court in reviewing the decision. *See Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008). In circumstances where a medical source opinion may affect the outcome of a case, substantial evidence does not support an ALJ's adverse decision if it cannot be determined what, if any, weight the ALJ afforded the opinion. *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008); *see also Woods v. Astrue*, 780 F. Supp. 2d 904, 913-14 (E.D. Mo. 2011).

In the instant written decision, the ALJ set out the findings Dr. Buffkins made during her psychological evaluation of Buchanan, noting specifically that Buchanan's mental status examination was essentially normal; that Buchanan

exhibited an appropriate affect and, at times, a mildly irritable mood; that her

cognition was intact, and her insight and judgment were good; that her

concentration and persistence were adequate during the evaluation, and her pace

slowed at times; and that Dr. Buffkins assigned a GAF score of 65-70, indicating

mild limitations of functioning. (Tr. 18.) Although Dr. Buffkins rendered an

opinion as to Buchanan's diagnoses (per history) and prognosis, she gave no

opinion as to the severity of Buchanan's impairments, what Buchanan could still

do despite her impairments, or any physical or mental restrictions. *See* 20 C.F.R. §

416.927(a)(2) (setting out contents of medical opinions). Nevertheless, the ALJ

noted Dr. Buffkins' observations during the evaluation to be consistent with other

evidence of record as well as with the RFC assessment as determined by the ALJ.

(*See* Tr. 18.) As such, when considered in view of the decision *in toto*, the Court is

able to determine that the ALJ accorded some weight to Dr. Buffkins' observations

and findings. Accordingly, although the ALJ did not use specific terms to identify

the precise weight he accorded Dr. Buffkins' limited opinion or her findings, the

failure to do so here does not require his finding of non-disability to be set aside.

*See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (administrative finding

not required to be set aside when deficiency in opinion-writing technique has no

bearing on outcome).

      In addition, a review of the record shows there to be substantial evidence to

support the ALJ's determination to accord some weight to Dr. Buffkins' findings and opinion. During her evaluation of Buchanan in October 2011, Dr. Buffkins identified Buchanan's daily activities to include going to school, working part-time, doing homework, and performing household chores. Buchanan's social interactions were noted to include going out for fun activities; getting along with family, friends, and a boyfriend of nine months; and experiencing some discord with teachers and some classmates. These observations are consistent with those of school staff who noted during the relevant period that Buchanan was arguing less at school, had a more pleasant attitude, and was participating in class. Buchanan was in the regular classroom at least eighty percent of the time, and she was earning passing grades. By April 2012, Buchanan was noted to be communicating effectively with her teachers and to have shown drastic improvement in her attitude. Although Buchanan demonstrated an intellectual ability to work competitively, teachers expressed concern regarding the appropriateness of Buchanan's behavior as well as her ability to cope with adult tasks and responsibilities. Notably, Buchanan graduated in June 2012 with a 2.336 GPA and an attendance record of 95.69 %.

Dr. Buffkins' observations are likewise consistent with those of Buchanan's treating psychiatrist, Dr. Bhuyan, whose notes during the relevant period show that Buchanan engaged in significant daily and social activities, including working

part-time, planning travel to New York, maintaining a relationship with her boyfriend, and getting good grades at school. Dr. Bhuyan also observed Buchanan to have an appropriate affect and normal mood during this period. Although Buchanan was observed to be defiant, immature, and a "little volatile," Dr. Bhuyan consistently assigned GAF scores indicating only mild limitations. Notably, Dr. Buffkins' GAF score of 65-70 is consistent with the GAF scores consistently assigned by Dr. Bhuyan. In addition, there is no indication that Buchanan engaged in defiant or inappropriate behavior during her evaluation with Dr. Buffkins, and the record shows any such behavior not to have precluded Buchanan from succeeding at school or in her social relationships. *E.g., Moore v. Astrue*, 623 F.3d 599, 603 (8th Cir. 2010).

Where, as here, there are conflicts in the medical opinion evidence, it is the duty of the Commissioner to resolve such conflicts. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). An ALJ does not err in relying on the findings of a one-time consulting physician when he couples such consideration with an independent review of the medical evidence of record. *Krogmeier v. Barnhart,* 294 F.3d 1019, 1025 (8th Cir. 2002). This is what the ALJ did here. When the weight of the medical evidence is more in keeping with the findings made by the consulting physician, an ALJ may accord greater weight to such findings than to inconsistent and unsupported findings by a treating physician. *Hogan v. Apfel*, 239

F.3d 958, 961 (8th Cir. 2001). The ALJ did not err in according some weight to the findings made by Dr. Buffkins in her October 2011 psychological evaluation of Buchanan.

A review of the ALJ's decision shows the ALJ to have evaluated all of the opinion evidence of record and to have adequately explained his consideration thereof such that the Court can determine what weight the ALJ afforded the medical source opinions. For the reasons set out above, substantial evidence on the record as whole supports the ALJ's determination as to the weight he accorded the opinion evidence in this cause.

## IV.A.4.    Other points

Finally, the record does not support Buchanan's suggestions that the ALJ should have considered the third party opinion of A. Duvall (SSA interviewer) in determining the credibility and weight to give to Dr. Bhuyan's opinion (Doc. 16 at 11), or that the ALJ failed to consider "the entire line of evidence regarding [Buchanan's] insight into her illness," *id*. at 13, based on his finding that Buchanan's "symptoms were controlled by medication, which 'severely undermine[d Buchanan's] credibility,'" *id*. at 12.

First, the interview by Duvall was conducted to simply complete Form SSA-3367 (Tr. 202-04), which was used to assist DDS in making a decision regarding Buchanan's alleged disability. *Id*. at 11. There is no suggestion that Duvall had

any relevant credentials to assess Buchanan's impairments, nor that Duvall was an acceptable medical source offering an opinion for consideration by the ALJ. The fact Buchanan acted inappropriately in a routine interview with an SSA employee, and that she relied on her mother to answer questions is not required to be considered by the ALJ.

Next, as far as Buchanan's alleged lack of insight into her illness and refusal to accept her limitations, the ALJ recited a substantial history of how Buchanan has progressed in school and in social relationships. (Tr. 14-15.) During the hearing before the ALJ, Buchanan explained the fact that she had a history of being bullied, but reported that since she has been in college "people are nice and she is not getting bullied." *Id*. at 15. She also detailed among other things: routine daily responsibilities such as helping to take care of her sister and cleaning; a recognition that she has difficulty with math; achievements at school (graduating from high school and attending college), as well as a goal to earn a college degree in special education. *Id*. at 14-15. In his written decision, the ALJ thoroughly reviewed Buchanan's testimony and records regarding how Buchanan interacts with others. The ALJ recognized that Buchanan expressed embarrassment about others knowing she was disabled, however, Buchanan achieved the laudable goals of graduating from high school and attending college. *Id*. 14-15. Furthermore, an Individualized Education Program meeting held a few months before Buchanan's

eighteenth birthday revealed that Buchanan was "able to advocate for herself" and that she "was providing good input when she participated in class discussions, she was able to communicate with teachers and staff members, she did not need as many breaks, and she had improved her attitude drastically." *Id.* at 15.

When considering the evidence in the record as a whole, these two points do not detract from the substantial evidence that supports the ALJ's decision.

## VI. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above on the claims raised by Buchanan on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Buchanan's disability ended November 15, 2011, and

that Buchanan did not become disabled after that date.  This Court finds that substantial evidence on the record as a whole supports the ALJ's decision, therefore it must be affirmed.  *Davis,* 239 F.3d at 966.  This Court may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**.

A separate Judgment in accordance with Memorandum and Order is entered herewith.

Dated:  <u>March 27, 2015</u>

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE